**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Gregory Ashley Moyer,<br><br>    Plaintiff,<br><br> v.<br><br>Shon Jackson and Koch Industries, Inc.,<br><br>    Defendants. | Case No.: 0:23-cv-00138-JWB-LIB<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR MISCELLANEOUS RELIEF** |

### INTRODUCTION

Since commencing this lawsuit just a few short months ago, Plaintiff has sent myriad written communications to Defendants' counsel that reflect a deepening and escalating hostility, and raise serious questions about Plaintiff's ability to effectively litigate this case without court-appointed assistance.[1] While these communications began as improper annoyances, they have become increasingly aggressive, targeted, and threatening. Counsel have politely and repeatedly asked that these communications cease, but these requests have produced the opposite result. On May 15, and over the course of four emails, Plaintiff called one of Defendants' counsel a "dumbass" and a "hoe," and told her to "[g]o to hell," to "shut the fuck up," and to "[t]ake that letter you wrote me turn around and shove it up your c[**]t." These communications are not just repugnant, they are hostile, threatening, and officious both to this Court and to counsel. Without action by

---

[1] Defendants reserve all rights, including, but not limited to, defenses and objections as to personal jurisdiction, and the filing of this motion is subject to, and without waiver of, any such defenses and objections.

- 1 -

this Court, it is evident that these vile and threatening communications will multiply or worse.

Accordingly, Defendants respectfully request that this Court invoke its inherent authority and issue an order that: (1) prohibits Plaintiff from sending additional lewd, hostile, or threatening communications to Defendants' counsel; (2) requires Plaintiff to show cause as to why appropriate sanctions should not be imposed as a consequence of this conduct; and (3) appoints an attorney to represent Plaintiff, and through whom any and all communications from Plaintiff to the Court, Defendants, or Defendants' counsel must be filtered. Given the nature of the conduct and escalating behavior by Plaintiff, Defendants also ask that the Court consider shortening the time for responsive briefing and to resolve this matter on the papers at the Court's earliest convenience.

## BACKGROUND

Plaintiff, *pro se*, filed this defamation action against Jackson and Koch Industries on January 17, 2023. *See* ECF Doc. 1. On February 15, 2023, Defendants filed a timely motion to dismiss, and a hearing on Defendants' motion is schedule for June 20, 2023. *See* ECF Docs. 6–8. Since this case was commenced, Defendants' counsel have received a series of atypical and escalating communications from Plaintiff.

On January 31, 2023, Plaintiff emailed Defendants' counsel to "attempt[] to do an informal request for discovery." *See* Decl. of Tracey Holmes Donesky, Ex. A. Counsel responded "[t]he applicable rules do not permit discovery requests to be served at this time, whether formally or informally," and reminded Plaintiff "to direct any communications to Koch, its employees and/or Mr. Jackson to [counsel's] attention." *Id.*

On February 3, Plaintiff sent two emails to Defendants' counsel that attached myriad PDF documents (including a local Oklahoma news article from 2015 titled "More named in Lahoma KKK Halloween incident") and accused Defendants of engaging in "[t]errible behavior" that is "[v]ery malicious." *Id.*, Exs. B–C. Defendants' counsel responded on February 6, stating "[w]hile I understand that you feel strongly about your case, I ask that you try and limit your communications with us," and asking Plaintiff to "allow th[e] process to unfold in accordance with the applicable rules." *Id.*, Ex. A. Plaintiff responded that he "believe[d] we should just speak through the courts at this point in preparing for a trial." *Id.*

On February 15, Defendants' counsel sent Plaintiff an email enclosing courtesy copies of Defendants' motion-to-dismiss papers, which were also served on Plaintiff by mail. *See id.*, Ex. D. That evening, Plaintiff responded by sending Defendants' counsel eight emails between 10:33 p.m. and 12:06 a.m. *See id.*, Exs. E–L. In four of these emails, Plaintiff, using slightly varying language, invited Defendants' counsel to meet and confer at restaurants or a "meeting room" in Minneapolis or St. Cloud, and threatened to "take action against [counsel's] firm." *See id.*, Exs. E–H. In the remaining four emails, Plaintiff attached various documents and audio recordings of phone calls. *See id.*, Ex. I–L.

On February 16, Defendants' counsel sent Plaintiff an email asking whether Plaintiff would "agree to dismiss any part or all of [the] complaint as sought in [Defendants'] motion [to dismiss]," noting counsel received "eight successive emails from [Plaintiff] between 10:33 p.m. and 12:06 a.m. attaching a variety of audio recordings and documents," and reiterating "[t]o the extent that limited communications regarding your

case are needed, I suggest that such communications be in letter form and sent by written letter to our Minneapolis office." *Id.*, Ex. M. Plaintiff sent two responses to this email. First, Plaintiff responded: "We will see watch [sic] the judge thinks. Save it. You and your clients just lied to a federal judge." *Id.* Second, Plaintiff stated "I have contacted the court and am requesting a hearing in regards to your actions," and asserted "[y]our client needs to be held accountable by an authority." *Id.*

On April 19, Plaintiff emailed Defendants' counsel asserting "[t]here is a new civil lawsuit being filed next week," and asking "for service purposes" whether counsel would "be representing th[e] Koch personnel in th[e] additional case?" *Id.*, Ex. N. Counsel acknowledged Plaintiff's email, and asked Plaintiff to "[p]lease follow the proper service rules in connection with whatever other lawsuit you intend to file." *Id.*

On April 24, Plaintiff emailed Defendants' counsel requesting that counsel "provide the name and address of the koch [sic] in-house and contracted public relations woman that created the new campaign for Shon." *Id.* Counsel responded by reiterating "as a reminder to our correspondence on February 2, 2023, you may not directly contact current Koch Industries employees." *Id.*

On May 15, Defendants' counsel sent a letter to Plaintiff by email and certified mail explaining "it has come to our attention that at approximately 10:14 p.m. CDT on Sunday, May 14, 2023, you sent an email directly to Shon Jackson." *Id.*, Ex. O. Counsel explained such communication "is inappropriate," reiterated "to the extent you wish to communicate with Koch Industries, current Koch Industries employees, or Shon Jackson, you must direct

those communications to me," and requested "any such communications be sent formally by letter." *Id.*

Plaintiff responded with four emails, which are captured in full below:

> **From:** G <gregorymoyer1@gmail.com>
> **Sent:** Monday, May 15, 2023 7:36 PM
> **To:** Donesky, Tracey Holmes
> **Cc:** Leiendecker, Andrew P.; Jod Bass
> **Subject:** Re: Moyer v. Jackson et. al.
> **Attachments:** 2023.05.15 Ltr from T. Donesky to G. Moyer (002).pdf
>
> **External Email – Use Caution**
>
> Go to hell Tracey.
>
> Sent from my iPhone

*Id.*, Ex. P.

> **From:** G <gregorymoyer1@gmail.com>
> **Sent:** Monday, May 15, 2023 7:55 PM
> **To:** Donesky, Tracey Holmes
> **Cc:** Leiendecker, Andrew P.
> **Subject:** Re: Moyer v. Jackson et. al.
> **Attachments:** 2023.05.15 Ltr from T. Donesky to G. Moyer (002).pdf
>
> **External Email – Use Caution**
>
> Look dumbass I'll send you a letter this evening explaining that you said that you were not representing them in a civil rights lawsuit if there is not a goddamn protection order in place in regards to that civil rights lawsuit then you need to shut the fuck up. Take that letter you wrote me turn around and shove it up your cunt.
>
> Sent from my iPhone

*Id.*, Ex. Q.

> **From:** G <gregorymoyer1@gmail.com>
> **Sent:** Monday, May 15, 2023 8:07 PM
> **To:** Donesky, Tracey Holmes
> **Cc:** Leiendecker, Andrew P.; Jod Bass
> **Subject:** Re: Moyer v. Jackson et. al.
> **Attachments:** 2023.05.15 Ltr from T. Donesky to G. Moyer (002).pdf
>
> **External Email – Use Caution**
>
> Another thing before you shove that letter up that gaping hole. I specifically asked you for the information Of the public relations contractor that took down all of Shon Jackson snake photos and started the publicity campaign for him on Koch Industries in on social media. That person is going to receive a subpoena however you have tried to help them Dodge being served.
>
> You can't have it both ways hoe.
>
> Sent from my iPhone

*Id.*, Ex. R.

> **From:** G <gregorymoyer1@gmail.com>
> **Sent:** Monday, May 15, 2023 8:09 PM
> **To:** Donesky, Tracey Holmes
> **Cc:** Leiendecker, Andrew P.; Jod Bass
> **Subject:** Re: Moyer v. Jackson et. al.
> **Attachments:** 2023.05.15 Ltr from T. Donesky to G. Moyer (002).pdf
>
> **External Email – Use Caution**
>
> And before you start cry baby and about your sensibilities being hurt you need to remember that your clients violated my civil rights and fabricated an incident and you tried to lie to a federal judge by submitting a fake video. The court will be reminded of that.
>
> Sent from my iPhone

*Id.*, Ex. S.

Plaintiff's highly inappropriate conduct did not end with these emails. On May 19, Plaintiff called Defendant Shon Jackson's wife at her work phone number and left a voicemail where he asked her if she would be interested in testifying against Jackson, and informed her that Plaintiff wished to take her deposition. *See id.* ¶ 22.

- 6 -

## ARGUMENT

This court has "inherent authority" to manage "the conduct of the parties and sanction a party for . . . misconduct." *Castle Aero Fl. Int'l, Inc. v. Mktg. & Fin. Servs., Inc.*, 2014 WL 2993727, at *19 (D. Minn. July 2, 2014); *see also Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 561 (3d Cir. 1985) ("Courts have . . . relied on the concept of inherent power to impose several species of sanctions on those who abuse the judicial process."). This includes the authority "to impose silence, respect, and decorum . . . and submission to [the court's] lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)); *see also Mohammed v. Anderson*, 833 F. App'x 651, 654 (7th Cir. 2020) ("Courts possess an inherent authority to sanction litigants for misconduct."); 35B C.J.S. Fed. Civ. Proc. § 1396 (explaining courts have "the inherent power" to issue sanctions where a party "acts in bad faith, vexatiously, wantonly, or for oppressive reasons"). Courts may also punish "contemptuous behavior in and outside its presence." *Rembold v. Helsel*, 2017 WL 2559149, at *4 (D. Md. June 13, 2017). This authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)); *see also, e.g.*, *Paradyme Mgmt., Inc. v. Curto*, 2018 WL 9989656, at *5 (D. Md. June 11, 2018) ("[D]istrict courts have the inherent power to sanction parties for certain bad faith conduct, even where there is no particular procedural rule that affirmatively invests the court with the power to sanction." (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 955 (4th Cir. 1995))).

The vile and offensive nature of Plaintiff's May 15 communications to Defendants' counsel cannot be overstated. What had been an escalating series of inappropriate communications has crossed into cruel, lewd, and threatening territory. It cannot be allowed in a court of law, and must be stopped now. *E.g.*, *Sanders v. Delta Air Lines, Inc.*, 2014 WL 2859135, at *3 (D. Ariz. June 23, 2014) ("Harassing, coercive, argumentative, threatening, or similar statements to opposing counsel will not be permitted."). Accordingly, recognizing the unique circumstances and nature of their request, Defendants respectfully ask that this Court issue an order granting three forms of relief.

***First***, Defendants respectfully request this Court issue an order stating in the strongest terms that any further vile, harassing, threatening, violent, or otherwise improper communications to Defendants' counsel (or Defendants themselves) is prohibited. A litigant's *pro se* status "does not excuse him from following basic rules of ethics and civility." *Id.*; *see also Scott v. Palmer*, 2014 WL 6685813, at *3 (E.D. Cal. Nov. 26, 2014) (condemning *pro se* plaintiff telling defendant's counsel to "shut the fuck up" during a deposition, and explaining plaintiff's *pro se* status "will not shield him from the consequences of abusive behavior, and he is required to behave with civility"). It is entirely proper to order that Plaintiff not use profanity, abusive or threatening language, or otherwise engage in uncivil behavior when communicating with Defendants' counsel. *E.g.*, *Block v. Snohomish Cnty.*, 2014 WL 6750475, at *10 (W.D. Wash. Dec. 1, 2014) (issuing order that, among other things, prohibits plaintiff from "us[ing] profanity or abusive invective in her oral or written communications with counsel"); *Glas-Weld Sys., Inc. v. Boyle*, 2013 WL 4828965, at *1 (D. Or. Sept. 6, 2013) (issuing order admonishing

*pro se* defendant and advising that "profanity, threats, and taunts have no place in this case" and "such behavior will not be tolerated"); *Sunegova v. Vill. of Rye Brook*, 2011 WL 6640424, at *11 (S.D.N.Y. Dec. 22, 2011) (explaining *pro se* plaintiff "must understand the difference between advocacy . . . and personal insults," defendants' counsel had "done nothing to deserve [p]laintiff's personal attacks," and if plaintiff "communicates with the Court or opposing counsel in an inappropriate or threatening manner, the case will be dismissed with prejudice").

***Second***, Defendants respectfully request this Court issue an order requiring Plaintiff to show cause as to why he should not be sanctioned by the Court for his abhorrent communications to Defendants' counsel. If Plaintiff fails to make a sufficient showing, Defendants ask that this Court impose appropriate sanctions against Plaintiff. *E.g.*, *Curto*, 2018 WL 9989656, at *4–5, *10 (concluding *pro se* defendant "failed to conduct herself in a respectful manner" in her communications to the opposing party and counsel, and ordering that she "show cause why [a] sanction should not be imposed" by "convincingly demonstrat[ing] that she . . . will discontinue the disrespectful and rude tone of her communications with [the opposing party]'s counsel in her filings in this Court"); *Scott*, 2014 WL 6685813, at *3 ("The use of profanity toward counsel, or any other abusive conduct, is unacceptable and it is ground for sanctions, including terminating sanctions."); *Cameron v. Lambert*, 2008 WL 4823596, at *4 (S.D.N.Y. Nov. 7, 2008) (awarding sanction of dismissal with prejudice where *pro se* plaintiff, among other things, "threaten[ed] physical force, disparage[ed] counsel, [and] us[ed] profanity").

***Third***, Defendants respectfully request this Court appoint counsel to represent Plaintiff in this action and to review any and all communications, filings, and other papers Plaintiff intends to send to this Court, Defendants, or Defendants' counsel. Although *pro se* litigants "do[] not have a constitutional or statutory right to court appointed representation" district courts have "discretion" to "appoint counsel" for such litigants. *Njema v. Wells Fargo Bank, N.A.*, 2014 WL 12649205, at *2 (D. Minn. May 12, 2014) (explaining the court had referred the request for appointment of counsel to the Federal *Pro Se* Project); *see also, e.g.*, *Andersen v. Carver Cnty. Sheriff's Office*, 2023 WL 204618, at *1 (D. Minn. Jan. 17, 2023) (explaining "in civil cases," "the appointment of counsel is a matter of the Court's discretion."); *Spottswood v. Washington Cnty.*, 2020 WL 133323, at *2–3 (D. Minn. Jan. 13, 2020) (granting request to refer *pro se* plaintiff to the *Pro Se* Project); *United States v. Burk*, 2014 WL 2800759, at *10 (W.D. Tex. June 18, 2014) (explaining "a federal court may appoint an attorney to a natural person pursuant to [its] inherent power" to "process litigation to a just and equitable conclusion" (cleaned up)); *Beaulieu v. Ludeman*, 2009 WL 5216843, at *1 (D. Minn. Dec. 29, 2009) (explaining court had appointed counsel to represent *pro se* plaintiff in civil action asserting claim under 42 U.S.C. § 1983). Defendants submit it is appropriate for this Court to exercise its discretion and appoint counsel for Plaintiff—or at minimum refer Plaintiff to the *Pro Se* Project. Plaintiff's conduct in this case—including both the abhorrent communications to Defendants' counsel on May 15 and Plaintiff's inappropriate contact with Defendant Jackson's wife on May 19—establishes the necessity for a filter between Plaintiff and Defendants' counsel (and Defendants themselves). A court-appointed attorney will ensure

Defendants' counsel and Defendants themselves are not exposed to further inappropriate and harassing behavior from Plaintiff, will ensure this Court receives appropriate communications and submissions from all parties, and will help restore a sense of dignity and decorum to these proceedings. *E.g.*, *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (explaining district courts may "appoint counsel in civil cases" if "the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel" (citation omitted)).

\*   \*   \*

Plaintiff's irredeemably vulgar May 15 communications to Defendants' counsel have crossed a line. They have gone from being improper annoyances to vile, harassing, and threatening. They demonstrate a clear lack of respect for Defendants, Defendants' counsel, this Court, and the judicial process. They serve no purpose other than to attempt to harass and intimidate, and must not be tolerated.

## CONCLUSION

For the foregoing reasons, Defendants' respectfully request that this Court grant their motion for miscellaneous relief.

Dated: May 22, 2023

*/s/ Todd A. Noteboom*
Todd A. Noteboom (#240047)
Tracey Holmes Donesky (#0302727)
Andrew P. Leiendecker (#0399107)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 335-1500
todd.noteboom@stinson.com
tracey.donesky@stinson.com
andrew.leiendecker@stinson.com

***Attorneys for Defendants***